IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JANICE M. O'REILLY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 18-00787-CV-W-ODS ) |
| ANDREW M. SAUL,<br>Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## ORDER AND OPINION REVERSING THE COMMISSIONER'S FINAL DECISION AND AWARDING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits. For the following reasons, the Commissioner's decision is reversed and the case is remanded with the instruction to award benefits to Plaintiff.

### I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to a determination of whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; it is relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

The Court has the authority to affirm, modify, or reverse the decision of the ALJ, "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Ordinarily, when an ALJ's decision denying benefits is reversed, the "abundant deference" owed to the ALJ counsels in favor of remanding the case for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (quoting *Cox v. Apfel*, 160 F.3d 1203, 1210 (8th Cir. 1998)). Accordingly, the Court "may enter an immediate finding of disability only if the record 'overwhelmingly supports' such a finding." *Id.* (quoting *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992)). Remand for further administrative proceedings is not appropriate where "further proceedings would serve no useful purpose" and "would merely delay receipt of benefits." *Olson v. Shalala*, 48 F.3d 321, 323 (8th Cir. 1995); *Cline v. Sullivan*, 939 F.2d 560, 569 (8th Cir. 1991).

## II. BACKGROUND

Plaintiff, who was born in 1964, filed an application for disability insurance benefits on December 16, 2013, alleging a disability onset date of August 16, 2013. R. at 15, 31, 168-69, 401. Plaintiff's claim was initially denied, and after a hearing, Administrative Law Judge ("ALJ") Christina Young Mein found Plaintiff was not disabled. R. at 15-26. Plaintiff unsuccessfully appealed the decision to the Appeals Council. R. at 1-4. She then appealed to this Court. *O'Reilly v. Berryhill*, No. 16-CV-6098-ODS.

In October 2017, the Court reversed Commissioner's decision, and remanded the matter for additional administrative proceedings. R. at 496-98. Upon remand, the Court ordered the ALJ to (1) consider whether work performed by Plaintiff in 2014 should be deemed unsuccessful work attempts or substantial gainful activities; (2) obtain a consultative examination to determine the extent of Plaintiff's physical and mental limitations; (3) reformulate the RFC, and when doing so, consider the consultative examinations, include limitations related to Plaintiff's motor coordination, manual dexterity, and grip strength consistent with Dr. Price's findings or explain why no such limitations are included in the RFC, and include limitations related to Plaintiff's cognitive impairments or specify why no such limitations are included in the RFC; (4) propose a hypothetical to the vocational expert ("VE") accounting for the limitations set forth in the reformulated RFC; (5) re-evaluate Plaintiff's credibility; and (6) consider new evidence properly before the ALJ. *Id.*

Upon remand, ALJ Christina Young Mein held another hearing. R. at 423-48. On July 31, 2018, the ALJ issued a decision finding Plaintiff was not disabled. R. at 401-14. The ALJ determined Plaintiff had the following severe impairments: history of seizures, multiple sclerosis, a cognitive disorder, depression, and obsessive behavior. R. at 404. She also concluded Plaintiff had the following limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she cannot climb ladders, ropes or scaffolds or work at unprotected heights or around hazardous machinery. The claimant can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. The claimant can occasionally balance on uneven surfaces. The claimant should avoid more than occasional vibration. The claimant cannot use foot controls more than occasionally. The claimant can frequently reach, handle, finger, feel and push or pull. The claimant cannot read very small print but can read ordinary newspaper or book print. The claimant cannot work in extremes of cold and heat. The claimant can work in moderate noise levels. The claimant can occasionally operate a motor vehicle, tolerate wetness and humidity, and tolerate exposure to fumes, odors, dust, and pulmonary irritants. The claimant can understand, remember and carry out simple, routine tasks that may entail detailed instructions but not complex tasks or fast-paced production quotas that may be too demanding or stressful. The claimant cannot interact with the public in the performance of job duties but can occasionally interact with coworkers. The claimant can adapt to occasional changes in a work setting.

R. at 406. Based upon Plaintiff's RFC and the VE's testimony, the ALJ found Plaintiff could perform work as a document specialist, cafeteria attendant, or cleaner and polisher. R. at 413-14, 444-46.

### III. DISCUSSION
#### A. Failure to Meet Burden at Step Five

Plaintiff asks the Court to reverse the ALJ's decision and award her benefits because the ALJ failed to sustain her burden at step five. When determining whether a claimant is disabled, the ALJ employs a five-step process. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). An ALJ "must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience." R. at 403. "If the claimant is not able to do other work and meets the duration requirement, she is disabled." *Id.* While the claimant generally has the burden of demonstrating she is disabled, at step five, "a limited burden of going forward with the

3

evidence shifts to the Social Security Administration." *Id.* To support a finding that Plaintiff is not disabled at step five, "the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [Plaintiff] can do, given [her] residual functional capacity, age, education, and work experience." *Id.* (citations omitted).

Plaintiff argues the VE testified inconsistently with the Dictionary of Occupational Title ("DOT"), and the ALJ failed to resolve the conflicts. Doc. #12, at 19-20. An ALJ must "ask about any possible conflict" between a VE's testimony and information in the DOT. *Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014). Here, the ALJ asked the VE if her testimony was consistent with the DOT, and the VE answered in the affirmative. R. at 446.

However, "[i]f there is an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information.'" *Id.* at 989-90 (quoting Social Security Ruling 00–4p). Specifically, "[t]he ALJ is not absolved of this duty merely because the VE responds 'yes' when asked if her testimony is consistent with the DOT." *Id.* at 990 (citation omitted). Also, the VE must provide an explanation as to why her testimony is inconsistent with the DOT, which the ALJ may accept or reject. *Id.* (citation omitted). "Absent adequate rebuttal, however, VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform.'" *Id.* (citation omitted).

Here, the ALJ concluded Plaintiff had the residual functional capacity to **frequently** reach and handle. R. at 406. But work as a cleaner and polisher requires **constant** reaching and handling. DOT #709.687-010. "A 'constant' activity or condition exists two-thirds or more of the time in an occupation; a 'frequent' activity or condition exists between one-third and two-thirds of the time." *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) (citing Dictionary of Occupational Titles, app. C, at 1013). Defendant concedes work as a cleaner and polisher requires constant reaching and handling, and also seems to concede there is a conflict between the VE's testimony and the DOT that remained unresolved. Doc. #17, at 20. But Defendant argues the ALJ's

4

step five burden is met with the other jobs identified by the VE and adopted by the ALJ. *Id*.

With regard to the document specialist job, the Court notes the VE identified the position, but then testified, "excuse me, strike that, my apologies, the handling is constant…." R. at 406. The VE's testimony indicated Plaintiff was unable to perform the functions of the document specialist job because it required constant handling, and Plaintiff was limited to frequent handling. *Id.* But The ALJ did not follow up with the VE about her testimony that she was striking her initial identification of the document specialist job. Yet, the ALJ identified the document specialist position as one Plaintiff was able to do. R. at 413. The fact that the ALJ's finding is not supported by the VE's testimony demonstrates Defendant has not met the burden of showing Plaintiff is able to work as a document specialist.[1]

Consequently, Defendant is left with the cafeteria worker job to sustain the burden at step five. Plaintiff contends the VE's testimony that Plaintiff could perform work as a cafeteria worker contradicts the DOT. The ALJ determined Plaintiff "cannot interact with the public in the performance of job duties." R. at 406. During the hearing, the ALJ asked the VE if a cafeteria worker would be required to interact with the public. R. at 446. The VE testified the job would entail "cleaning out like a large cafeteria, the trays, taking the trays to the garbage, cleaning them off, taking them back and forth, not really one-on-one interaction with customers." *Id*.

At odds with the VE's testimony, the DOT states a cafeteria worker "[m]ay circulate among diners and serve coffee…." DOT #311.677-010. Neither this possible job responsibility nor how Plaintiff could fulfill this responsibility when prohibited from

---

[1] Even if the VE identified the document specialist job and the ALJ's finding was supported by the VE's testimony, the VE's testimony is inconsistent with the DOT because the job requires constant (not frequent) handling, and the individual "[m]ay receive payment for duplicate copies." DOT #207.685-014. As established supra, Plaintiff is unable to constantly handle objects; she is limited to frequent handling. R. at 406. In addition, given Plaintiff's inability to interact with the public as determined by the ALJ, the receipt of payment – unless performed without human interaction – seems inconsistent with Plaintiff's limitations. At a minimum, this issue was not examined during the hearing, and there is no evidence in the record demonstrating work as a document specialist who is unable to interact with the public exists in significant numbers in the national economy. For these additional reasons, Defendant fails to meet its burden at step five with regard to the document specialist job.

interaction with the public was discussed during the hearing or examined in the ALJ's decision. Thus, there was no resolution as to the apparent conflict between the VE's testimony that Plaintiff would "not really" have "one-on-one interaction with customers," and the DOT's statement that the job included an ability to circulate among diners and serve coffee.[2] Because the ALJ's finding that Plaintiff could work as a cafeteria worker (or, as discussed above, any other position) is not supported by the VE's testimony, Defendant has not met the burden of showing Plaintiff is able to work.

### B. RFC is Unsupported by Substantial Evidence

Plaintiff argues the ALJ's RFC is unsupported by substantial evidence because the ALJ did not abide by this Court's remand order. The ALJ bears the "primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (quoting *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)). Some medical evidence must support the ALJ's RFC determination. *Id.* (citing *Lauer v. Apfel*, 245 F.3d 700,704 (8th Cir. 2001)).

#### *(1) Motor Coordination, Manual Dexterity, and Grip Strength Limitations*

The Court directed the ALJ to include limitations in the RFC related to Plaintiff's motor coordination, manual dexterity, and grip strength consistent with Dr. Price's opinions or explain why no limitations were warranted in the RFC. R. at 497. The ALJ did not discuss Dr. Price's conclusions about Plaintiff's limitations regarding motor coordination, manual dexterity, and grip strength, and she did not explain why Dr. Price's other limitations were not included in the RFC. R. at 411. Defendant argues the ALJ included Dr. Price's limitations in the RFC because the RFC limited Plaintiff to

---

[2] Even if the Court were to find there was no conflict between the VE's testimony and the DOT regarding the cafeteria worker job, Defendant still failed to meet the burden at step five. While the number of cafeteria worker jobs existing in the national economy was established by Defendant, the number of cafeteria worker jobs existing in the national economy where the cafeteria worker would have no interaction with the public (in accordance with Plaintiff's limitation) was not established. Therefore, Defendant has not met the burden of demonstrating other work exists in significant numbers in the national economy that Plaintiff can do.

frequent reaching, handling, fingering, pushing, and pulling; prohibited from climbing of ladders, ropes, or scaffolds; and no more than occasional vibration. Doc. #17, at 11.

According to Dr. Price, Plaintiff's "hands are bilaterally below average… [and] both hands are below average on simple finger tapping." R. at 757. Dr. Price determined finger tapping in Plaintiff's dominant hand is rated in the eighth percentile, and finger tapping with her non-dominant hand is in the fourteenth percentile. R. at 761. He also found Plaintiff's grip strength in her dominant hand rates in the sixteenth percentile, and grip strength in her non-dominant hand is in the fiftieth percentile. *Id*. Contrary to Defendant's argument, the RFC, which permitted Plaintiff to frequently use her hands, does not account for the limitations set forth by Dr. Price regarding Plaintiff's motor coordination, manual dexterity, and grip strength. Further, the ALJ does not explain why Dr. Price's limitations were not included in the RFC.

### *(2) Cognitive Impairments*

The Court also directed the ALJ to include limitations in the RFC related to Plaintiff's cognitive impairments or specify why no such limitations were included in the RFC. The ALJ concluded Plaintiff's severe impairments, described as "significantly limit[ing] the claimant's ability to perform work activities," included a cognitive disorder. R. at 404. Yet, the ALJ also determined Plaintiff's cognitive disorder "provides support for a level of limitation, but does not support a finding of disability," and Plaintiff only had a "mild" cognitive impairment. R. at 404, 408-09, 411. The inconsistencies in these conclusions are difficult to understand.

Nonetheless, according to Dr. Price, testing revealed "indices of mild cognitive impairment, most notably in recall of auditory and visual information, psychomotor processing speed, visual attention and visual spatial functions." R. at 375. Dr. Price also concluded Plaintiff's "slower processing speed and memory" were potential barriers to being able to work, and she "may profit from a more repetitive work environment and a slower paced work." R. at 376.

The ALJ afforded "some weight" to Dr. Price's opinions, noting Plaintiff functions in the "high range of native intellectual abilities with indices of mild cognitive impairment" and nothing in Dr. Price's report "suggests" Plaintiff would be unable to perform" within the limitations set forth by the RFC. R. at 411. Relevant to this particular issue, the

RFC indicated (1) Plaintiff can "understand, remember and carry out simple, routine tasks that may entail detailed instructions but not complex tasks or fast-paced production quotas that may be too demanding or stressful"; and (2) Plaintiff "can adapt to occasional changes in a work setting." R. at 406.

Nothing in the RFC identifies Plaintiff's limitations with regard to slower processing speed, memory, difficulty in recalling auditory and visually information, or the potential need to work in a repetitive work environment. Also, the inclusion of Plaintiff being able to understand, remember, and carry out tasks that "may entail detailed instructions" contradicts Dr. Price's conclusion. Contrary to the Court's Order, the ALJ did not include all limitations related to Plaintiff's cognitive impairments in the RFC, and the ALJ failed to sufficiently explain why limitations were not included.

The ALJ did not properly account for limitations related to Plaintiff's motor coordination, manual dexterity, grip strength, and cognitive disorder; therefore, the RFC is not supported by substantial evidence. For this additional reason, the Court reverses the ALJ's decision, and remands the case with instruction to award benefits to Plaintiff. Because the Court reverses the ALJ's decision and remands the case with instruction to award benefits, it is unnecessary for the Court to consider Plaintiff's additional arguments seeking the same relief.

## IV. CONCLUSION

For the foregoing reasons, the Court finds there is not substantial evidence in the record as a whole to support the ALJ's decision. The Court finds further proceedings would serve no useful purpose, and would only delay receipt of benefits. Accordingly, the Court reverses the ALJ's decision, and remands the case with instruction to award benefits to Plaintiff.

IT IS SO ORDERED.

DATE: July 9, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT